UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT CONTRERAS, | ) | CASE NO. ED CV 04-00731 RZ |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| vs. | ) | ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and each party has filed a supporting memorandum. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

///

///

///

**I.**

Plaintiff Robert Contreras applied for disability benefits on June 10, 2000, alleging that he had been disabled since June 27, 1998 by an injury to his lower back. The Social Security Administration denied the application both initially and on reconsideration, and Plaintiff then proceeded to an administrative hearing on October 8, 2002. The Administrative Law Judge took testimony from Plaintiff, a medical expert and a vocational expert, and received exhibits into evidence, but determined that Plaintiff was not disabled. [AR 21 *et seq.*] The Appeals Council denied review [AR 5-7], thereby making the decision of the Administrative Law Judge the decision of the Commissioner. 20 C.F.R. § 404.981; *Sims v. Apfel,* 530 U.S. 103, 107, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff timely sought review in this Court.

**II.**

Plaintiff's sole argument for relief rests on a statement by a treating physician, Michael Roach, M.D., in October 2001 that "He [Plaintiff] cannot work." [AR 316.] The Administrative Law Judge's decision addressed this statement as follows, after noting two other doctors who reported that Plaintiff was temporarily totally disabled:

> As the evaluations by these [two] treating sources were conducted in connection with a worker's compensation claim, their expressions of temporary total disability . . . can reasonably be interpreted as referring to an inability of the claimant to perform his usual and customary employment. The same can be said of Dr. Michael Roach's similar expressions of inability to work [citation]. Furthermore, . . . determinations regarding the claimant's disability [pursuant to state law] are not binding on the Social Security Administration. Such determinations use their own criteria and are inconsistent with the medical evidence

1   summarized herein and the testimony of both the medical expert
2   and the vocational expert.

3

4   [AR 25.] The Court, having reviewed the record, concludes Dr. Roach's statement supplies
5   no basis for reversal or remand.

6

7   **A.   Plaintiff's 1998 Injury and First Back Surgery**

8   Plaintiff suffered a herniated disc at L5-S1 in June 1998 while working as a
9   tow truck driver. [AR 178-79.] In November 1998, after more conservative treatments
10  proved ineffective, Plaintiff underwent a lumbar laminectomy and discectomy. [AR 138-
11  42.] At least two doctors who examined Plaintiff shortly thereafter noted his resulting
12  improvement, but not his outright cure.  Nick K. Sharma, M.D., one of Plaintiff's treating
13  physicians, reported that Plaintiff had reduced symptoms and improved mobility – "a
14  satisfactory result, but not an optimal result" – after five months of post-operative physical
15  therapy. [AR 263.]  Noting that Plaintiff continued to have constant "slight" pain in his
16  back that worsened (to "moderate") with prolonged or heavy work, Dr. Sharma believed
17  that Plaintiff could perform light work, but only light work. [AR 264.]

18  A second physician, orthopedist George J. Wiesseman, M.D., examined
19  Plaintiff on October 5, 1999 in connection with Plaintiff's state worker's compensation
20  claim.  [AR 207-17.]   Although Dr. Wiesseman's conclusions largely jibe with those of
21  Dr. Sharma (which findings Dr. Wiesseman reviewed, quoted and otherwise discussed),
22  Dr. Wiesseman thought it "probable that the patient's symptoms have improved somewhat
23  since that [May 1999] examination," based on objective and subjective factors he (Dr.
24  Wiesseman) observed.  As an objective matter, Plaintiff's October testing was negative on
25  two tests that were positive in May. In addition, Dr. Wiesseman noted, Plaintiff's
26  subjective pain symptoms had decreased since May and were now only occasional, not
27  constant. [AR 215.]  In a conclusion similar to Dr. Sharma's (that Plaintiff could perform
28  light work but nothing more strenuous), Dr. Wiesseman opined that Plaintiff should not

return to tow-truck driving but could pursue work as a locksmith, a new trade in which Plaintiff had been training. [AR 216.]

### B.    October 1999: Pain Worsens, But Soon Improves Again

Plaintiff's back pain worsened again in October 1999 (on a date not pinpointed in the record, although presumably after Dr. Wiesseman's modestly favorable examination on October 5).  A December 1999 MRI of Plaintiff's lumbar spine revealed degenerative disc disease but no recurrent herniation. [AR 182.] When Dr. Wiesseman examined Plaintiff again in January 2000, he noted Plaintiff's increased complaints of pain and stiffness in his lower back, although the doctor believed Plaintiff had improved again since October.  Plaintiff's limitations on his range of motion were similar to those present in the same doctor's October 5, 1999 examination. [AR 182-186.]   Dr. Wiesseman concluded that Plaintiff's "condition has improved to pre-exacerbation levels," and, as the doctor stated three months earlier, "it is now reasonable for him to discontinue treatment and pursue work as a locksmith," the training for which he had completed.  [AR 185; AR 182 (completed training).]

### C.    Pain Worsens Again; Plaintiff Undergoes Second, Successful Surgery

As the Administrative Law Judge acknowledged, Plaintiff's back condition worsened again by late 2001.  In September 2001, an MRI showed a disc bulge at L5-S1. [AR 323-24.] Plaintiff's increasing pain ultimately prompted a spinal fusion surgery in late November 2001 with modest but positive results.  [*See* AR 311-20, 329.]  On September 17, 2001, two months before that surgery, Dr. Roach saw Plaintiff and noted that "[h]e continues to have pain.  I believe he needs to have a spinal fusion.  We will go ahead and schedule this when convenient."  [AR 317.]  The statement that Plaintiff "cannot work" appears in the next, similarly brief record by Dr. Roach on October 10, 2001.  In its entirety, that entry reads as follows:

1    Mr. Contreras is here today.   He notes continuing

2    radiating symptoms.  *He cannot work*.

3    We will proceed with a fusion.  I will had [sic] a T lift to

4    this.

5

6    [AR 316 (emphasis added; paragraph break as in original).]   Next, on Wednesday,

7    November 21, 2001, in his final pre-surgery entry, Dr. Roach noted that Plaintiff was

8    "being pre-oped for a spinal fusion.  He has lumbar spondylosis.  I would recommend that

9    we fuse. . . .  We will proceed with surgery on Monday [November 26, 2001]." [AR 315.]

10   Plaintiff recovered well from his surgery.  Dr. Roach noted on December 12,

11   2001 that his "leg pain is gone.  His back is doing well."  [AR 313.] On Plaintiff's next

12   post-operative follow-up visit, on February 12, 2002, Dr. Roach noted that Plaintiff "has

13   some degree of back pain," but "[i]t is not overwhelming."   The doctor noted that plaintiff

14   had some difficulty with a straight-leg-raise exercise but "was doing well otherwise." [AR

15   311.] At a further follow-up in June 2002, some seven months after the surgery, Dr. Roach

16   observed that Plaintiff's "x-rays look good.  The fusion of L5-S1 appears to be maturing

17   and consolidating."  Plaintiff still had pain in his right leg at that time, which gave the

18   doctor "a little bit" of concern, although he noted that "the pain [is] not as bad as it was

19   preoperatively[.]"  [AR 329.]

20

21   **D.    Experts: Plaintiff Can Do Light Work, With Significant Limitations**

22   The medical expert who testified at Plaintiff's administrative hearing based

23   on a review of the record, Sami Nafoosi, M.D., opined that Plaintiff had significant work-

24   related limitations due to his lumbar surgery and occasionally severe asthma.  Nevertheless,

25   Dr. Nafoosi testified that these conditions, singly or in combination, did not meet or equal

26   any impairment listed in the governing regulations, and that Plaintiff could engage in light

27   work conforming to the noted limitations. [AR 360-62.]  The Administrative Law Judge

28   accepted Dr. Nafoosi's testimony because it comported with the record as a whole,

1   including Plaintiff's somewhat physically active regular activities.  The judge found those

2   activities – including laundry, shopping, driving, babysitting and riding an exercise bicycle

3   – coupled with Plaintiff's use of over-the-counter pain medications rather than stronger

4   ones, to be somewhat inconsistent with Plaintiff's current complaints of utterly debilitating

5   pain.   [AR 345-46, 349-50, 353, 355-56.]   The judge accepted the testimony of the

6   vocational expert that a "narrow range" of jobs existed in the economy that a person with

7   Plaintiff's limitations (as set out by Dr. Nafoosi) could perform.

8

9           **E.      Analysis of Dr. Roach's "He Cannot Work" Remark**

10                    Viewed against the foregoing background, Dr. Roach's "[h]e cannot work"

11   statement does not detract from the substantial evidence supporting the Commissioner's

12   decision.   As a preliminary matter, the statement may well reflect *Plaintiff's* subjective

13   statements, merely recorded by Dr. Roach, instead of reflecting the independent medical

14   judgment of Dr. Roach.   The doctor's own view and suggested course of treatment appear

15   in the second half of the statement, after a paragraph break.   The first half of the statement

16   is, "Mr. Contreras is here today.   He notes continuing radiating symptoms.   He cannot

17   work."   In other words, a fair interpretation of this statement is that Plaintiff "noted" not

18   only continuing radiating pain but also the fact that he cannot work.

19                    In any event, even if the Court assumes that the isolated "cannot work"

20   statement indeed were an adequately-supported medical judgment of (state-law-based)

21   disability, that statement still would not justify reversal or remand for two reasons.   First,

22   it addresses a different state-law standard for disability than that involved in Social

23   Security cases, as the Administrative Law Judge noted.   *See Desrossiers v. Secretary of*

24   *Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988) (opinion of doctor not

25   binding); *cf. Young v. Sullivan*, 911 F.2d 180, 185 (9h Cir. 1990) (disability conclusion of

26   state administrative agency not binding, even if made pursuant to more rigorous test for

27   disability than applied by federal law), *cited with approval in Stanistreet v. Chater*, 21

28   F.Supp.2d 1129, 1136 n.17 (C.D. Cal. 1995).   Second, and more fundamentally, the

statement was made prior to the very surgery meant to reduce Plaintiff's pain.  Because substantial evidence in the record shows that the surgery indeed reduced Plaintiff's symptoms to the point that he could perform some limited kinds of light work, any view that "he cannot work" *before* that corrective surgery occurred supplies no basis for reversal or remand.

### III.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED:   August   __25__, 2005

/s/<br>
RALPH ZAREFSKY<br>
UNITED STATES MAGISTRATE JUDGE